**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| **ANTHONY KENNEDY,** | : | **Case No. 2:25-cv-1436** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **District Judge Edmund A. Sargus, Jr.** |
| **vs.** | : | |
| | : | |
| **JAMES FORSHEY,** *et al.*, | : | **Chief Magistrate Judge Stephanie K.** |
| | : | **Bowman** |
| **Defendants.** | : | |
| | : | |

---

**REPORT AND RECOMMENDATIONS**

---

Plaintiff, a prisoner at the Warren Correctional Institution ("WCI"), proceeding without the assistance of counsel, has filed a civil rights complaint challenging actions by Defendants stemming from Plaintiff's incarceration at Noble Correctional Institution ("NCI") that subsequently led to Plaintiff's transfer to WCI. (Doc. 4). Plaintiff states that, at WCI, he has been assaulted, extorted, and raped, and that the faulty conduct report stemming from Defendants' actions has deprived Plaintiff of access to meaningful programs and will adversely affect his clemency and parole applications. By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 3).

This matter is before the Court for a *sua sponte* review of the Complaint to determine whether the Complaint, or any portion of it, should be dismissed because it is

frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.C.S. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

For the following reasons, the Undersigned **RECOMMEDS** that Plaintiff be permitted to proceed with his due process privacy claim against Defendant Cobb and that Plaintiff be permitted to amend his claims challenging the conduct report and the Rules Infraction Board ("RIB") proceedings to provide more details as described more fully below. But it is further **RECOMMENDED** that all claims against Defendants in their official capacities for monetary damages be **DISMISSED with prejudice** and that all other remaining claims be **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

## I.    LEGAL STANDARD

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fee and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or *repetitive* lawsuits.'" *Id*. at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)(1) as part of the statute, which provides in relevant part:

(2) Notwithstanding any filing fee, or any portion thereof, that may have

been paid, the court shall dismiss the case at any time if the court determines that—

\*\*\*

(B) the action or appeal—

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31. *See also* § 1915A(b). Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C §§ 1915A and 1915(e)(2)(B)(ii). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands of the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations' …

3

[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter … to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. Apr. 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II.  ALLEGATIONS IN COMPLAINT

Plaintiff states that, while he was incarcerated at NCI, he attended therapy sessions with Defendant Mental Health liaison Ms. Cobb twice a week for a period of six months

4

because he was experiencing depression. He states that on July 12, 2024, Ms. Cobb revealed sensitive, confidential information about his criminal case to NCI staff in violation of his right to confidentiality and privacy, as well as the national H.I.P.P.A. law. (Doc. 4, at 32). Plaintiff was interrogated by the unit manager and deputy warden (who are not named as Defendants), during which sensitive information about his criminal case not publicly known was referenced, and after which Plaintiff was sent to TPU (restrictive confinement) pending investigation of the sensitive statements he had made during his therapy sessions.

On July 17, 2024, the NCI RIB found Plaintiff guilty of Conduct Report NCI-24-003733, which Plaintiff contends "was a faulty report because the offense did not coincide with actual events." Plaintiff notes that Defendant Aufdenkampe is the RIB charging officer, that Defendant Harper is the RIB chairman, and that Defendant Chapman is the RIB second officer. Plaintiff goes on to explain that he asked Defendants Aufdenkampe, Harper, and Chapman if they knew the definition of "stalking." When they answered that they did not, Plaintiff asked them how they could find him guilty of "stalking" if they did not know the definition of "stalking." (*Id*.). Plaintiff states that the RIB Board recommended a Security Classification Review to increase Plaintiff's security level. He further states that although the security review's mandatory appeal was never conducted, his security level was still increased. He contends that this was defamation of his character, slander, a violation of his right to due process, and a denial of his right to access to the courts.

Next, Plaintiff states that Defendant TPU Officer John Doe, or Dow[1], disposed of and/or never filed Plaintiff's appeal of the RIB Board's July 17, 2024 verdict. This, Plaintiff contends, was another violation of his due process rights and denial of his access to the courts through the mishandling of Plaintiff's legal mail (his appeal).

Plaintiff asserts that James Forshey, as the NCI Warden, "is directly responsible for all the actions of his employees." (*Id*.).

Plaintiff states that he was transferred "to a very dangerous, higher security level 3 prison," WCI, where he has been assaulted, extorted, and raped. He further states that the faulty conduct report has prevented him from getting into meaningful education, job, and other programs, and also will adversely affect his clemency and parole applications. (*Id*. at 32-33). He concludes:

> Ms. Cobb violated privilege communication and H.I.P.P.A. laws. RIB charging Officer C. Aufdenkampe, RIB Chairman J. Harper and RIB Officer C. Chapman is guilty of slander, defamation of character and has violated my due process rights. TPU Officer John Dow has denied me access to the courts, mishandled my legal mail (my appeal) and has violated my due process rights. Finally James Forshey is the ringleader of this conspiracy and is in complicity of such corruption. The actions exhibited by the Warden of NCI and his employees show malice, wanton corruption and reckless disregard to ODRC policy and Ohio Administrative Codes.
>
> All of the defendants of NCI did, purposely, with prior calculation and design, restrained my liberty through force, threat and deception by engaging in a pattern of corrupt activity that is contrary to the dignity of the state of Ohio. They have not only lost their way and created a miscarriage

---

[1] It is unclear whether Plaintiff uses the name "John Doe" or "John Dow" to refer to an actual individual with that name or whether Plaintiff uses the name "John Doe or "John Dow" as a placeholder to refer to a TPU officer whose name is unknown to Plaintiff.

6

of justice, but they have purposely abandoned their oath and created an abortion of justice. Because such corruption is so erroneous and gross that it was done with malice, wanton and reckless disregard.

(*Id*. at 32).

Plaintiff names as Defendants: James Forshey (NCI Warden); Ms. Cobb (NCI Mental Health Liaison); NCI Officer C. Aufdenkampe, (RIB charging officer); NCI Officer J. Harper (RIB Chairman); NCI Officer C. Chapman (2nd RIB Officer); and NCI Officer John Doe, or Dow (TPU Officer). (*Id*. at 31).

In relief, Plaintiff asks for the RIB Conduct Report NCI-24-0037733 to be vacated and to be awarded damages in the amount of $3,000,000. (*Id*. at 34).

## III.    ANALYSIS

Based on the above allegations, the Undersigned understands Plaintiff to be raising, pursuant to 42 U.S.C. § 1983, claims under the First, and/or Eighth, and/or Fourteenth Amendments alleging: violation of his right to privacy; the filing of a false or faulty conduct report; defamation of character and slander; improper security reclassification and transfer; denial of access to institution programs and adverse impact on clemency and parole applications; denial of access to courts through mishandling of legal mail (RIB appeal); violations of Ohio Department of Rehabilitation and Correction ("ODRC") and Ohio Administrative Code ("OAC") provisions; and conspiracy and/or a pattern of corrupt activity.

For the following reasons, the Undersigned is persuaded that Plaintiff's Fourteenth Amendment privacy claim may **PROCEED** against Defendant Cobb. It is also

7

**RECOMMENDED** that Plaintiff be permitted to amend his claims to provide the Court with additional details about his due process challenge that Defendants Aufdenkampe, Harper, Chapman, and Doe (or Dow) were responsible for a faulty conduct report against him that was resolved without the benefit of due process at the RIB hearing. It is further **RECOMMENDED** that the Court **decide** at a later date whether to exercise supplemental jurisdiction over Plaintiff's state-law claims of defamation and slander.

But the Undersigned **RECOMMENDS** that the Court **DISMISS with prejudice** all claims against Defendants in their official capacities for monetary damages and all other remaining claims **without prejudice** for failure to state a claim upon which relief can be granted.

### A.  Fourteenth Amendment Privacy Claim

Plaintiff alleges that Defendant Cobb, NCI's Mental Health Liaison, violated his right to privacy when she disclosed to NCI staff sensitive information about his criminal case that Plaintiff shared with her during therapy sessions. (Doc. 4, at 32). Plaintiff does not explicitly state, and this Court makes no finding at this time about, what that information was disclosed. Plaintiff's claim arguably implicates an interest in avoiding disclosure of personal matters rooted in the substantive due process protections of the Fourteenth Amendment. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (discussing *Whalen v. Roe*, 429 U.S. 589, 599, 603-04 (1977); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 465 (1977); and *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998)). In *Moore v. Prevo*, 379 F. App'x 425, 427 (6th Cir. 2010), the Sixth Circuit determined

that inmates have no constitutional right to privacy barring disclosure of an inmate's

sensitive *medical* information to corrections officers. But as a sister court recently

observed, "*Moore* did not address whether disclosure of *other* sensitive information,

including the fact that Plaintiff had been raped, violated the Fourteenth Amendment."

*Gardner v. Burgess*, No. 1:25-cv-1191, 2025 WL 3181603, at *8 (W.D. Mich. Nov. 14,

2025) (emphasis added). The court in *Gardner* permitted the plaintiff's Fourteenth

Amendment privacy claim to proceed at the screening stage because "taking Plaintiff's

allegations as true, Plaintiff's complaint does not suggest any legitimate penological

purpose underlying [the defendant corrections officer]'s disclosure of Plaintiff's history

of having been raped." *Id*.

At this early stage in these proceedings, accepting Plaintiff's allegations as true,

and without knowing *what* sensitive information Defendant Cobb disclosed *or* whether

the disclosure was in furtherance of a legitimate penological interest, the Undersigned

concludes that Plaintiff's Fourteenth Amendment privacy claim against Defendant Cobb

may **PROCEED** to further development.[2] The Undersigned expresses no opinion at this

time on the merits of Plaintiff's claims or whether there may be defenses or procedural

bars that will prevent him from ultimately obtaining relief.

---

[2] To the extent that Plaintiff alleges that Defendant Cobb violated the Health Insurance Portability and Accountability Act ("HIPPA"), that allegation fails to state a § 1983 claim, which Plaintiff even acknowledges. (Doc. 5, at 39). "HIPPA regulations do not confer a private right of act on an individual." *Burley v. Rider*, No. 1:17-cv-88, 2018 WL 6033531, at *5 (W.D. Mich. Aug. 27, 2018), *report and recommendation adopted*, No. 1:17-cv-88, 2018 WL 4443071 (W.D. Mich. Sept. 18, 2018).

## B. Fourteenth Amendment Due Process Claim

Plaintiff's Complaint contains allegations which, construed liberally, *suggest* a Fourteenth Amendment claim that Defendants Aufdenkampe, Harper, and Chapman promulgated a faulty conduct report against Plaintiff and/or litigated that report at a RIB hearing that did not comply with due process. Additionally, Plaintiff states that Defendant John Doe, or Dow (TPU Officer) did not process or file Plaintiff's appeal of the RIB verdict. Generally, an allegation of a false conduct report standing alone does not state a claim under 1983. *See, e.g., Johnson v. Osborne*, No. 1:21-cv-3, 2021 WL 2077908, at *3 (S.D. Ohio Apr. 27, 2021), *report and recommendation adopted*, 2021 WL 2093258 (S.D. Ohio May 24, 2021) ("Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right."). And to the extent that false accusations of misconduct do raise due process concerns, such charges do not constitute a deprivation of constitutional rights *if* the charges subsequently are adjudicated in a *fair* hearing. *See, e.g., Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *4 (6th Cir. Apr. 23, 2019) (cleaned up). It is at this latter point where Plaintiff's allegations might implicate a constitutionally protected right.

The "minimum due process requirements for such a disciplinary hearing are: (1) written notice of the charges before the hearing, (2) an opportunity to call witnesses and present evidence, and (3) a written statement of the evidence relied upon and reason for the action taken." *Roundtree v. Dunlap*, No. 3:18-cv-1198, 2019 WL 3252912, at *5, n.7 (N.D. Ohio July 19, 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). The Court

10

is without sufficient details to determine whether Plaintiff can satisfy these prerequisites to state a due process claim stemming from the alleged faulty conduct report and RIB process by which it was adjudicated. But Plaintiff has stated enough to warrant an opportunity to amend his claims to provide additional details about the conduct of Defendants Aufdenkampe, Harper, Chapman, and Doe/Dow in the issuance of the challenged conduct report against Plaintiff and, more specifically, the manner in which the report was presented and resolved at the RIB proceeding. Plaintiff should be given **thirty (30) days** from the date of this Report to amend his claims to provide additional details about the faulty conduct report and RIB hearing process.

### C.  Defamation of Character and Slander

Relatedly, any claims against Defendants Aufdenkampe, Harper, Chapman, and Doe/Dow for defamation of character or slander would lie under state law and do not state a federal claim. *Cottman v. Horizon Healcare*, No. 1:15-cv-68, 2015 WL 959913, at *3 (S.D. Ohio Mar. 4, 2015). The Court should determine at a later stage in the proceedings whether the exercise of supplemental jurisdiction over state-law claims is appropriate. 28 U.S.C. § 1367.

The Undersigned turns now to the remainder of Plaintiff's claims, which should be dismissed.

### D.  Official Capacity Claims for Monetary Damages

As a preliminary matter, Plaintiff states that he is suing each Defendant in their individual and official capacities. (Doc. 5, at 38). But his claims against Defendants in

their official capacities are subject to dismissal to the extent that Plaintiff seeks monetary damages. Absent an express waiver, a state is immune from damages suits under the Eleventh Amendment. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6 h Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes No. 1 and No. 2*, 694 F.2d 449, 460 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663 (citations omitted); *Ford Motor Co. v. Dep't of Treasury of State of Indiana*, 323 U.S. 459, 464 (1945). A suit against Defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which Defendants are agents. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Because the named Defendants are immune from suit in their official capacities to the extent that Plaintiff seeks monetary damages, Plaintiff's claims against the Defendants in their official capacities should **be DISMISSED with prejudice**.

12

### E. *Respondeat Superior* Claims

Next, Plaintiff's claims against Defendant Warden Jay Forshey should be dismissed. Plaintiff names Forshey as a Defendant because he "is the warden of NCI and oversees all the operations of the prison, as is directly responsible for all the actions of his employees."[3] (Doc. 4, at 32). But this *respondeat superior* theory does not apply to § 1983 claims and may not serve as a basis for liability. *See Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992) "[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citation omitted). A supervisory official's failure to supervise, control or train an offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted). Plaintiff's allegations do not plausibly establish a nexus between any decision, action, or inaction by Warden Forshey and Defendant Cobb's disclosure of sensitive information about Plaintiff to NCI staff; or Defendants Aufdenkampe's, Harper's, Chapman's, and Doe/Dow's roles

---

[3] In his "Merit Brief," Plaintiff additionally states, "James Forshey, Warden, who is the ringleader of this conspiracy and oversees all the operations of NCI including the appeal process of the RIB decisions, security level reviews, and prison to prison transfers. He ignored the malicious actions of his staff consequently condoning such behavior." (Doc. 5, at 37).

in the issuing of the challenged conduct report and/or RIB hearing due process claim; or state-law claims of defamation of character and slander—the only claims not subject to dismissal at this stage of the proceedings. Accordingly, Plaintiff's claims against Warden Forshey should be **DISMISSED without prejudice** for failure to state a claim.[4]

### F. Remaining Claims

### 1. Access to courts and interference with legal mail (RIB appeal)

Plaintiff alleges that Defendant Doe/Dow's failure to submit Plaintiff's appeal of the RIB verdict constituted interference with legal mail in violation of Plaintiff's First Amendment right to access to the courts. This claim should be dismissed. As a preliminary matter, the Undersigned rejects as specious Plaintiff's conflation of Defendant Doe/Dow's alleged act of failing to file Plaintiff's RIB appeal with the act of interfering with legal mail. But even accepting Plaintiff's flawed factual premise, he fails to state a claim for denial of access to the courts because he alleges no actual injury to any pending litigation. *See Lewis v. Grider*, 27 F. App'x 282, 283 (6th Cir. 2001) (prisoner's claim for interference with access to the courts through opening legal mail failed "as he alleged no prejudice to any pending litigation"); *Lewis v. Cook County Bd. of Com'rs*, 6 F. App'x 428, 430 (7th Cir. 2001) (plaintiff could not prevail when he did "not describe a single legal case or claim that was in any way thwarted because the mail room staff opened his legal mail."). Irrespective of the manner in which Doe/Dow's handling of Plaintiff's RIB appeal may affect Plaintiff's due process claim discussed

---

[4] Plaintiff may further amend his complaint to include facts to support these claims.

14

above, here, the failure or refusal to file an appeal does not equate to an interference with legal mail or a denial of access to the courts. And the inability to challenge an RIB verdict does not constitute prejudice to any pending litigation or claims. Plaintiff's allegation should be dismissed for failure to state a claim.

### 2. Security level and transfer

Plaintiff's allegation that the faulty conduct report and RIB verdict impacted his security level and resulted in his transfer to a more dangerous facility does not implicate a liberty interest arising from the Due Process Clause. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) ("[A]n increase in security classification … does not constitute an 'atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." (internal question marks and citation omitted)); *cf. Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.") (citations omitted); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (no due process violation arising from transfer to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."). The Undersigned cannot construe from Plaintiff's allegations that the increase in his security level or transfer to WCI amounted to an 'atypical and significant' hardship in relation to the ordinary incidents of prison life. Plaintiff's claim should be **DISMISSED** for failure to

state a claim.

### 3. Clemency and parole applications

Plaintiff's allegation that the conduct report and RIB verdict will adversely affect his clemency and parole applications also fails to establish a liberty interest sufficient to implicate the Due Process Clause. "A liberty interest in parole eligibility derives only from state law." *Settle v. Tenn. Dep't of Corrs.*, 487 F. App'x 290, 291 (6th Cir. 2012) (cleaned up); *see also Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005) ("[T]here is no fundamental right to parole under the federal constitution.") (citations omitted). "[I]t is well established that Ohio law does not create a protected liberty interest in release from parole." *Jergens v. State of Ohio Dep't of Rehab. & Corrs. Adult Parole Auth.*, 492 F. App'x 567, 570 (6th Cir. 2012). Because Ohio law does not create a liberty interest in parole or clemency, Plaintiff is not able to state a viable § 1983 claim premised on his allegation that the conduct report and RIB verdict might adversely impact his parole and clemency applications. It is **RECOMMENDED** that this claim be dismissed for failure to state a claim upon which relief can be granted.

### 4. Access to institution programs and jobs

Relatedly, Plaintiff's allegations that the faulty conduct report and the elevation of his security level resulted in him being denied access to education, job, and other programs offered at WCI fail to implicate any constitutionally protected interest. *See Lane v. Love*, No. 3:21-cv-346-RLJ-DCP, 2021 WL 5710086, at *4 (E.D. Tenn. Dec. 1, 2021) (an inmate "does not have a constitutional right to jail educational programs.")

16

(citing *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (W.D. Mich. Feb. 25, 2010) (holding that "[p]risoners have no constitutional right to rehabilitation, education, or jobs")). *See also Parr v. Caruso*, No. 1:10-cv-109, 2010 WL 727106, at \*3 (W.D. Mich. Feb. 25, 2010) (collecting cases) (explaining that "[f]ederal courts consistently have found that prisoners have no constitutionally protected interest in vocational, rehabilitation, and education programs based on the Fourteenth Amendment" and that "prisoners do not have a fundamental right to prisoner reentry services under the Constitution."). Plaintiff's claim alleging constitutional deprivation from his denial of access to education, job, or other programs at WCI should be dismissed for failure to state a claim.

### 5. Violations of ODRC or OAC provisions

Plaintiff's allegations that Defendants violated ODRC and OAC provisions likewise fail to state a claim under § 1983. (Doc. 4, at 33). Prisoners do not have federal statutory or constitutional right to enforce prison officials' compliance with prison policies. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). That is, § 1983 does not provide a remedy for violations of state laws or regulations. *Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at \*4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007)). Since Defendants' alleged failure to comply with a state administrative rule or prison policy does not rise to the level of a constitutional violation, Plaintiff's allegation should be dismissed for failure to state a claim.

### 6. Pattern of corrupt activity

To the extent that Plaintiff's allegations accuse Defendants of a conspiracy and/or

17

of engaging in a pattern of corrupt activity (Doc. 4, at 33), his Complaint fails to state a §

1983 claim.

"A civil conspiracy under § 1983 is an agreement between two or more persons to

injure another by unlawful action." *Crowley v. Anderson Cnty. Tenn.*, 783 F. App'x 556,

560 (6th Cir. 2019) (cleaned up).

> To prevail on a civil conspiracy claim, [a plaintiff] must show that (1) a "single plan" existed, (2) [the defendant] "shared the general conspiratorial objective" to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused the injury" to [the plaintiff].

*Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (cleaned up). In the Sixth

Circuit, "conspiracy claims must be pled with some degree of specificity and [] vague

and conclusory allegations unsupported by material facts will not be sufficient to state

such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (cleaned

up).

Plaintiff's allegations do not meet this requirement. He alleges that Warden

Forshey "is the ringleader of this conspiracy," (Doc. 4, at 33); that the Defendants all

engaged in a conspiracy that violated his Due Process rights, (Doc. 5, at 38); and that Ms.

Cobb's violation of HIPPA constituted an element of this overarching conspiracy (*id*. at

39). These "conclusory assertions that defendants were acting in concert do not meet the

requirement that allegations of a conspiracy be pled with some degree of specificity."

*Ashenhurst v. 27th District Court*, No. CIV. 07-10082, 2007 WL 1119883, *2 (E.D.

Mich. Apr. 16, 2007) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) and

18

*Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984)). At base, Plaintiff's conclusory assertion that his allegations demonstrate a "pattern of corrupt activity" does not identify or invoke any federal rights that may have been violated sufficient to state a § 1983 claim. Accordingly, any such claims should be dismissed for failure to state a claim.

## IV.  SUMMARY AND CONCLUSION

The Undersigned has screened the Complaint (Doc. 4) as required under 28 U.S.C. §§ 1915 and 1915A and finds that Plaintiff's Fourteenth Amendment privacy claim may **PROCEED** against Defendant Cobb.

It is **RECOMMENDED** that Plaintiff be given **thirty (30) days** from the date of this Report to file a complete amended complaint for the sole purpose of providing additional details about the faulty conduct report and RIB hearing due process claim against Defendants Aufdenkampe, Harper, Chapman, and Doe/Dow.

It is further **RECOMMENDED** that the Court decide at a later date whether to exercise supplemental jurisdiction over Plaintiff's state-law claims of defamation and slander.

It is further **RECOMMENDED** that the Court **DISMISS with prejudice** all claims against Defendants in their official capacities for monetary damages and all other remaining claims **without prejudice**.

Insofar as the Court has conducted its initial screen of Plaintiff's Complaint and determined that his Fourteenth Amendment privacy claim may proceed, that he should be permitted to file an Amended Complaint addressing his faulty conduct report/RIB due

19

process claim, and that the Court should decide at a later stage whether to exercise supplemental jurisdiction over any state-law claims, Plaintiff's Motion to Proceed with 1983 Civil Suit (Doc. 2) **is DENIED as moot**.

One of the next steps in this case is for Defendant Cobb (and Defendants Aufdenkampe, Harper, Chapman, and Doe/Dow, if later determined to be warranted) to be served with the Summons and Complaint, and then for the Defendant(s) to file a response to the Complaint. Once the Court screens any amended complaint (with additional details about the faulty conduct report and RIB proceed), the Court will direct the United States Marshal Service to serve a copy of the Summons, the Complaint, and this Report and Recommendation on the specified Defendant(s) as directed by Plaintiff. To this last point, as noted above, it is not clear whether Plaintiff refers to the TPU officer who failed to file Plaintiff's RIB appeal as "John Doe" or "John Dow" because that is the officer's name or because Plaintiff does not know the officer's name. Plaintiff is advised that, should he be permitted to proceed with any claims against this officer, Plaintiff will be responsible for identifying the officer through discovery.

### PROCEDURE ON OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in

support of these objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). *See also Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO RECOMMENDED.**

May 13, 2026                  *s/Stephanie K. Bowman*
                                          STEPHANIE K. BOWMAN
                                          Chief United States Magistrate Judge